UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

       - against -                      **MEMORANDUM AND ORDER**

KEVIN PATRICK SMITH,                   S1 13 Cr. 511 (NRB)

       Defendants.
-----------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Presently before the Court is defendant's motion to suppress items seized from his gym bag, storage locker, and apartment, and defendant's motions in limine to preclude the government from introducing in its case-in-chief certain weapons and weapons-related paraphernalia seized from the storage locker, various items seized from his apartment, and evidence of defendant's prior convictions (ECF No. 8). For the reasons set forth below, we: (1) deny the motion to suppress the items seized from the gym bag, storage locker, and apartment; (2) deny the motion to preclude the items seized from the storage locker as it is directed to the firearms, ammunition, and ski masks,[1] but grant the motion with respect to the other items; (3) grant the motion to preclude the items seized from defendant's

---

[1] The Court denies the motion as it relates to the .44 magnum revolver and its ammunition regardless of whether the government submits, and a grand jury returns, a second superseding indictment with an expanded Count Two that includes the four other firearms and associated ammunition seized from the storage locker. However, the Court's denial of the motion as it relates to the other firearms and ammunition is contingent on the return of a second superseding indictment.

apartment except for the note that says "rob bank"; and (4) grant defendant's motion to preclude evidence of his prior convictions during the government's case-in-chief, except to establish, in the absence of a stipulation, the "felony" element of Count Two of the superseding indictment.

## BACKGROUND

Defendant was arrested on July 1, 2013 as he was exiting his apartment in Manhattan. At the time of his arrest, he was carrying a bag which contained, among other things, a black t-shirt, three pairs of gloves, and a key marked "888 storage." According to the government, defendant was on his way to a storage facility in the Bronx called Extra Space Storage to retrieve a .44 magnum revolver, which he planned to use to rob a Wells Fargo Bank in New Paltz, New York.

The government's information comes from evidence obtained by a confidential source ("CS") who met with defendant to discuss the planned robbery on four occasions, two of which were recorded. Affidavits submitted by an FBI agent reveal that defendant first approached the CS on June 26, 2013 to seek his participation in the robbery, and over the course of the next four days, defendant devised the following plan: at 8:00 a.m. on July 1, 2013, a driver would pick up defendant at his apartment in Manhattan and take him to the CS's location; defendant would

bring a bag, ski mask, and gloves; defendant and the CS would then drive to Extra Space Storage, located at 330 Bruckner Blvd. in the Bronx, where defendant would retrieve a .44 magnum revolver from his storage locker; finally, defendant and the CS would drive to the Wells Fargo Bank in New Paltz, defendant would rob the bank with his gun, and they would carry the cash to the car.

Later on the day of defendant's arrest, the government obtained a warrant to search his apartment and storage locker. FBI agents recovered from defendant's apartment, among other items, a ski mask, brass knuckles, a police radio, and a handwritten note that said, "rob bank." From the storage locker, agents recovered, <u>inter alia</u>, five firearms, one of which was a .44 magnum revolver, ammunition, and ski masks.

On or about July 15, 2013, defendant was indicted by a grand jury for attempting to rob the Wells Fargo Bank. On or about September 4, 2013, a grand jury returned a two-count superseding indictment. Count One of the superseding indictment charges defendant with attempted bank robbery. Count Two charges defendant with possessing a firearm, specifically a .44 magnum revolver, after having been convicted of a felony. The government has indicated that it will soon seek a second

superseding indictment expanding Count Two to include the four other firearms recovered from the storage locker.

In the motions before the Court, defendant argues that the contents of his gym bag, storage locker, and apartment should be suppressed because they were unreasonably searched in violation of the Fourth Amendment. In addition, he contends that items seized from his apartment and storage locker should be precluded in the government's case-in-chief under Rule 403 because their probative value is substantially outweighed by the risk of unfair prejudice.[2] Finally, defendant asserts that the government should be precluded from introducing evidence of his prior convictions in its case-in-chief pursuant to Rule 404(b).

## DISCUSSION

**A. The seizure of items from defendant's gym bag, storage locker, and apartment did not violate the Fourth Amendment.**

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. "The touchstone of the Fourth Amendment is reasonableness. The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable." <u>Florida v.</u>

---

[2] All textual citations to a "Rule" refer to the Federal Rules of Evidence.

Jimeno, 500 U.S. 248, 250 (1991). It is well established that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (citation omitted).

One such exception to the warrant requirement is an inventory search, that is, a search conducted to inventory personal property taken into police custody following a lawful arrest. Colorado v. Bertine, 479 U.S. 367, 371 (1987). Inventory searches serve "(1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or stolen property; and (3) to protect the police from potential danger." United States v. Lopez, 547 F.3d 364, 369 (2d Cir. 2008), cert. denied, 556 U.S. 1114 (2009). Although inventory searches are usually conducted at police stations, the Fourth Amendment does not require that they be conducted at any particular location. See United States v. Mendez, 315 F.3d 132, 137 n.3 (2002). "An inventory search pursuant to standardized procedures will be upheld unless there is a showing that the government acted in bad faith or searched . . . for the sole purpose of investigation." United States v. Arango-Correa, 851 F.2d 54, 59 (2d Cir. 1988).

Another exception to the warrant requirement is the inevitable discovery doctrine. Under this doctrine, "evidence that was illegally obtained will not be suppressed if the government can prove that the evidence would have been obtained inevitably even if there had been no statutory or constitutional violation." United States v. Mendez, 315 F.3d 132, 137 (2d Cir. 2002) (citation omitted). For this doctrine to apply, the government must "establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). Moreover, the court must find "with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." United States v. Heath, 455 F.3d 52, 60 (2d Cir. 2006).

The inevitable discovery doctrine may be combined with the inventory search exception to admit contested evidence if that evidence "would nonetheless have been discovered in the course of a valid inventory search." Mendez, 315 F.3d at 137. Here, the Court finds that the items seized from defendant's gym bag would have been inventoried by the FBI and therefore inevitably discovered. Accordingly, they will not be suppressed.[3]

---

[3] Because we find that the contents of the gym bag would inevitably have

Furthermore, the Court refuses to suppress the items seized from defendant's apartment and storage locker because the searches of these locations were conducted pursuant to a valid search warrant. Probable cause in support of that search warrant did not depend on the contents of the gym bag. Indeed, it was supplied by recorded conversations in which defendant allegedly told the CS he planned to rob the Wells Fargo Bank in New Paltz, New York with a .44 magnum revolver that he kept in a storage locker at Extra Space Storage in the Bronx.

**B. The firearms, ammunition, and ski masks found in the storage locker, and the "rob bank" note found in the apartment are not precluded under Rule 403.**

Relevant evidence -- defined by Rule 401 as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" -- is admissible unless excluded by the Constitution, federal statute, or a rule. See Fed. R. Evid. 402. Rule 403 states that such evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

---

been discovered in an inventory search, we need not reach the issue of whether the search of the bag was a valid search incident to arrest, another exception to the warrant requirement. See Chimel v. California, 395 U.S. 752, 763 (1969). Nonetheless, we find the government's argument on this issue persuasive. Given the possibility that the bag contained dangerous weapons, a warrantless search to ensure officer safety was justifiable. See United States v. Johnson, 467 F.2d 630, 639 (2d Cir. 1972), cert. denied, 413 U.S. 920 (1973) (holding that a warrantless search of a suitcase said by an informant to contain a gun was necessary due to safety considerations).

needlessly presenting cumulative evidence." Only the firearms, ammunition, and ski masks seized from the storage locker, and the note found in the apartment that says "rob bank" possess probative value that is not substantially outweighed by the risk of unfair prejudice. Accordingly, these items are admissible in the government's case-in-chief.[4]

Assuming the government seeks, and the grand jury returns, a second superseding indictment with an expanded Count Two that includes all firearms and ammunition found in the storage locker, these firearms and ammunition are not only probative, they are necessary elements of the felon-in-possession charge. Moreover, the .44 magnum revolver, its associated ammunition, and the ski masks kept in the storage locker are highly probative of guilt because they are items defendant allegedly told the CS he would bring to and use during the bank robbery. Therefore, they are also potentially corroborative of the CS's testimony. Finally, the handwritten note found in defendant's apartment that says "rob bank" is highly probative of defendant's intention to commit the charged crime.

By contrast, the items defendant left behind at his apartment (e.g., the ski mask, brass knuckles, and police radio)

---

[4] As noted previously, if the grand jury does not return a second superseding indictment, only the .44 magnum revolver and its associated ammunition will be admissible in the government's case-in-chief.

were practically unavailable to utilize in the charged bank robbery, while the crossbow, arrows, knives, hatchet, and print magazines kept in the storage locker do not appear to be related to the charged bank robbery. As such, they are not especially probative of guilt and risk creating unfair prejudice and confusion. Thus, they are precluded under Rule 403.

**C. Evidence of defendant's prior convictions is precluded under Rule 404(b) for purposes other than to establish the "felony" element of Count Two.**

Rule 404(b) prohibits the use of "[e]vidence of a crime, wrong, or other act" in an effort to prove that, "on a particular occasion," a person acted "in accordance" with whatever trait of "character" produced that crime, wrong, or other act. Nonetheless, in appropriate circumstances, prosecutors may use such evidence for other limited purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). None of these purposes support the introduction of defendant's criminal history in the government's case-in-chief.[5] Indeed, discussion of this history would simply have the effect of branding him as a dangerous criminal. Therefore, evidence of prior convictions is precluded in the

---

[5] It is unclear how many felony convictions defendant has on his record. According to defendant, he was convicted of first-degree assault in 1983 and also "may have been convicted of bank robbery." (ECF No. 9, Defendant's Memorandum of Law in Support of Motion to Suppress Physical Evidence and to Preclude In Limine the Admission of Unduly Prejudicial Evidence at 9-10.)

9

government's case-in-chief, with one caveat: unless the parties enter into a stipulation, the government may offer defendant's conviction(s) into evidence to establish, for purposes of Count Two, that he was a felon.[6]

## CONCLUSION

For the foregoing reasons, we grant defendant's motions in part and deny them in part.

Dated:   New York, New York
         October 11, 2013

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

---

[6] By stipulating to a prior felony conviction, defendant may prevent the jury from hearing about the nature or underlying facts of the conviction, but he may not prevent the jury from learning the fact that he has a prior felony conviction. See United States v. Chevere, 368 F.3d 120, 121 (2d Cir. 2004). In the absence of a stipulation, defendant may move to bifurcate the evidence related to his prior conviction(s). If the government agrees to bifurcate and the Court grants the motion, the government would then present evidence of defendant's conviction(s) only after the jury has been charged with determining whether he possessed a firearm. See United States v. Watts, 2005 U.S. Dist. LEXIS 24638, at *12-13 (S.D.N.Y. Oct. 21, 2005).

10

Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for the Government**

Hadassa Waxman, Esq.
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

**Attorney for Defendant**

Louis Freeman, Esq.
75 Maiden Lane, Suite 503
New York, NY 10038